IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES E. MURPHY, | No. 4:23-CV-02061 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| UNITED STATES, | |
| Defendant. | |

## MEMORANDUM OPINION

**JANUARY 30, 2024**

Plaintiff James E. Murphy filed the instant *pro se* civil rights action following his release from custody at the Federal Correctional Institution Schuylkill (FCI Schuylkill) in Minersville, Pennsylvania. He sues multiple federal officials under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), for being incarcerated beyond his release date due to a sentencing calculation dispute. He also asserts a negligence claim against the United States under the Federal Tort Claims Act. Murphy seeks an extension of *Bivens* that is unwarranted under the facts of this case. Thus, his *Bivens* claims will be dismissed and this case will proceed beyond screening only as to his FTCA claim against the United States.

I.      BACKGROUND

Murphy is no stranger to this Court. In 2022, he filed a petition under 28 U.S.C. § 2241 challenging the Bureau of Prisons' (BOP) calculation of his aggregate sentence for his multiple criminal convictions.[1] Murphy's sentencing dispute was extremely complex, requiring—among other things—expert consultation from a Management Analyst at the BOP's Designation and Sentence Computation Center in Grand Prairie, Texas.[2]

The Court need not rehash the intricacies of Murphy's habeas challenge, as they are fully set forth in my colleague, the Honorable Sylvia H. Rambo's, February 1, 2023 opinion.[3] For purposes of the instant case, it is sufficient to recount that Murphy asserted that his aggregate sentence (following a reduction of one of his sentences to time served) was 175 months and 2 days, while the BOP and its experts maintained that his aggregate sentence was 196 months and 22 days.[4] Ultimately, after thorough review and analysis, Judge Rambo found that she was "constrained to accept Murphy's calculations," primarily because the BOP had failed to establish why its sentencing calculations were "authorized by statute, regulation, or policy."[5]

---

[1] *See Murphy v. Sage*, No. 1:22-cv-0630, 2023 WL 1453153, at *1 (M.D. Pa. Feb. 1, 2023).
[2] *See id.*, at *2.
[3] *See id.* at *1-2.
[4] *See id.*
[5] *Id.*, at *3.

2

The BOP was ordered to recalculate Murphy's projected release date and, if that release date had already passed, to immediately release Murphy from its custody to begin his term of supervised release.[6] The BOP sought reconsideration of that decision, which Judge Rambo swiftly denied.[7] On February 6, 2023, Respondent notified the Court that Murphy had been released from BOP custody on February 3, 2023.[8]

Murphy now returns to court to seek civil liability (and compensation) for being incarcerated beyond the release date of his recalculated aggregate sentence.[9] He sues numerous federal officials, including Warden Jessica Sage, "sentencing computation staff" member Ms. White, Northeast Regional Director N.C. English, General Counsel Ian Connors, Attorney Advisor Drew O. Inman, "unknown Grand Prairie Designation staff," "unknown Federal Bureau of Prisons sentencing computation staff," and the United States of America.[10]

Murphy alleges that his Fifth and Eighth Amendment rights were violated by his over-incarceration caused by the BOP's sentencing miscalculations.[11] He additionally asserts that federal officials were negligent in their calculations and thus the United States is liable under the Federal Tort Claims Act (FTCA), 28

---

[6] *See id.*
[7] *See Murphy v. Sage*, No. 1:22-cv-630, Docs. 30, 31 (M.D. Pa.).
[8] *See id.*, Doc. 32
[9] *See generally* Doc. 1.
[10] *See id.* at 1-3, 7-9.
[11] *See id.* at 12 ¶¶ 29-30.

3

U.S.C. §§ 1346(b), 2671-2680.  He seeks a declaration that his constitutional rights were violated and additionally requests nominal, compensatory, and punitive damages.[12]

At the screening stage, Murphy claims under *Bivens* fail.  The Court, however, will permit his FTCA claim to proceed such that the United States can appropriately respond.

## II.    STANDARDS OF REVIEW

Under 28 U.S.C. § 1915(e)(2)(B)(ii), a court "shall dismiss" an *in forma pauperis* case or claim "at any time if the court determines that . . . the action . . . fails to state a claim upon which relief may be granted[.]"[13]  This language closely tracks Federal Rule of Civil Procedure 12(b)(6).  Accordingly, courts apply the same standard of review to Section 1915(e)(2)(B)(ii) as they utilize when resolving a motion to dismiss under Rule 12(b)(6).[14]

In deciding a Rule 12(b)(6) motion to dismiss, courts should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[15]  The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the

---

12  *See id.* at 13-14.
13  28 U.S.C. § 1915(e)(2)(B)(ii).
14  *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 109-10 & n.11 (3d Cir. 2002); *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000).
15  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *see Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).

light most favorable to the plaintiff.[16] In addition to the facts alleged on the face of the complaint, the court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents" attached to a defendant's motion to dismiss if the plaintiff's claims are based upon these documents.[17]

When the sufficiency of a complaint is challenged, the court must conduct a three-step inquiry.[18] At step one, the court must "tak[e] note of the elements [the] plaintiff must plead to state a claim."[19] Second, the court should distinguish well-pleaded factual allegations—which must be taken as true—from mere legal conclusions, which "are not entitled to the assumption of truth" and may be disregarded.[20] Finally, the court must review the presumed-truthful allegations "and then determine whether they plausibly give rise to an entitlement to relief."[21] Deciding plausibility is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[22]

---

[16] *Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008).
[17] *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).
[18] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (internal citations and quotation marks omitted) (footnote omitted).
[19] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009) (alterations in original)).
[20] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[21] *Id.* (quoting *Iqbal*, 556 U.S. at 679).
[22] *Iqbal*, 556 U.S. at 681.

Because Murphy proceeds *pro se*, his pleadings are to be liberally construed and his complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers[.]"[23]

## III.   DISCUSSION

Murphy seeks to hold multiple federal officials liable for miscalculating his aggregate sentence, which he alleges caused him to be incarcerated beyond his release date. Because this is clearly a new *Bivens* context and special factors counsel against an extension of the *Bivens* remedy, the Court will dismiss Murphy's *Bivens* claims.

In 1971, the Supreme Court held that, "even absent statutory authorization, it would enforce a damages remedy" to compensate individuals who experienced violations by federal officers of the Fourth Amendment's prohibition against unreasonable searches and seizures.[24] Subsequently, the Court extended the *Bivens* cause of action in two cases involving other types of constitutional violations. First, in *Davis v. Passman*, 442 U.S. 228, 248-49 (1979), the Court held that the Fifth Amendment's Due Process Clause provided an implied damages remedy to an administrative assistant claiming that a Congressman had discriminated against her based on gender. Next, the Court concluded that the Eighth Amendment's prohibition on cruel and unusual punishment implied a cause of action for damages

---

[23] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).
[24] *Ziglar v. Abbasi*, 582 U.S. 120, 130-31 (2017); *Bivens*, 403 U.S. at 397.

against federal prison officials who failed to provide adequate medical treatment to inmates.[25] "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only instances in which the Court has approved of an implied damages remedy under the Constitution itself."[26]

Over the years that followed, the Supreme Court has "consistently refused to expand *Bivens* actions beyond these three specific contexts."[27] The Supreme Court has specifically noted that "expanding the *Bivens* remedy is now a 'disfavored' judicial activity."[28]

In *Ziglar v. Abbasi*, the Supreme Court provided a "restrictive, two-step framework for courts to follow when analyzing *Bivens* claims."[29] First, the court must determine whether the case presents a "new context," *i.e.*, if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme] Court."[30] The Supreme Court has defined "new context" broadly,[31] explaining that "even a modest [*Bivens*] extension is still an extension."[32] A *Bivens* claim "may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."[33]

---

[25] *See Carlson v. Green*, 446 U.S. 14, 19 (1980).
[26] *Abbasi*, 582 U.S. at 131.
[27] *Mack v. Yost*, 968 F.3d 311, 318 (3d Cir. 2020).
[28] *Abbasi*, 582 U.S. at 135 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)).
[29] *Mack*, 968 F.3d at 317.
[30] *Id.* (alteration in original) (quoting *Abbasi*, 582 U.S. at 139).
[31] *See id.*
[32] *Abassi*, 582 U.S. at 147.
[33] *Hernandez v. Mesa*, 589 U.S. __, 140 S. Ct. 735, 743 (2020).

7

If the case presents a new context, courts must then consider whether special factors counsel against extending the *Bivens* remedy.[34] If so, it must reject the requested extension.[35] The Supreme Court has clarified that this inquiry "must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."[36] If the court "ha[s] reason to pause before applying *Bivens* in a new context or to a new class of defendants," then special factors counseling hesitation exist.[37] There may be many special factors, but two are "particularly weighty: the availability of an alternative remedial structure and separation-of-powers concerns."[38]

Murphy's proposed Fifth and Eighth Amendment claims clearly present new contexts for *Bivens* claims. The Supreme Court has never implied a damages remedy for a Fifth Amendment due process claim or an Eighth Amendment "cruel and unusual punishments" claim based on the miscalculation of a criminal sentence.

The second step under *Abbasi* asks whether special factors counsel against extending the *Bivens* remedy. The Court answers this question in the affirmative.

---

[34] *See Mack*, 968 F.3d at 317 (citing *Abbasi*, 582 U.S. at 136).
[35] *See id.* (citing *Hernandez*, 140 S. Ct. at 743).
[36] *Abbasi*, 582 U.S. at 136.
[37] *Hernandez*, 140 S. Ct. at 743.
[38] *Mack*, 968 F.3d at 320 (internal quotation marks omitted).

Specifically, a *Bivens* extension is unwarranted here primarily because there are multiple alternative remedies available.

As the Third Circuit has noted, the availability of the BOP's administrative remedy program often provides an alternative to a federal *Bivens* lawsuit.[39] Through the administrative remedy process, federal prisoners "can alert the BOP to unconstitutional officer conduct and policies and prevent such constitutional violations from recurring."[40] Although Murphy's attempt to resolve his sentencing dispute through the administrative process was ultimately unsuccessful, he had access to at least "some redress," and therefore the Court finds—as in *Mack*—that the BOP's administrative remedy program offers a "convincing reason" to refrain from extending *Bivens* to claims like those raised by Murphy.[41]

Murphy also was able to seek habeas relief through 28 U.S.C. § 2241. Indeed, Murphy successfully challenged the BOP's sentencing calculations regarding his aggregate sentence via a Section 2241 petition. The ability to challenge the BOP's sentencing calculations through a habeas petition is an additional convincing reason to refrain from extending the *Bivens* remedy here.[42]

---

[39] *See Mack*, 968 F.3d at 320-21; *Dongarra v. Smith*, 27 F.4th 174, 181 (3d Cir. 2022).
[40] *Mack*, 968 F.3d at 321.
[41] *See id.* (citations omitted); *see also Abbasi*, 582 U.S. at 137 ("[I]f there is an alternative remedial structure present in a certain case, that alone may limit the power of the Judiciary to infer a new *Bivens* cause of action.").
[42] *Cf. Mirmehdi v. United States*, 689 F.3d 975, 982 (9th Cir. 2011) (finding that availability of writ of habeas corpus provided alternative remedy and thus counseled against extension of *Bivens* remedy for prolonged immigration detention).

To the extent that Murphy may contend that he has no alternative remedy for overserving on his sentence now that he has been released, such a contention is undercut by his own lawsuit, in which he also asserts a claim under the Federal Tort Claims Act.  The possibility of relief under the FTCA—"a statutory scheme for torts committed by federal officers"—"weighs against inferring a new cause of action" under *Bivens*.[43]  That remains true even if the FTCA fails to "provide the exact same kind of relief *Bivens* would."[44]

In sum, Murphy's proposed Fifth and Eighth Amendment claims would extend *Bivens* to new contexts.  However, special factors counsel against such extensions, so the Court will dismiss those *Bivens* claims.

## IV.   LEAVE TO AMEND

Generally, "*in forma pauperis* plaintiffs who file complaints subject to dismissal under [28 U.S.C. § 1915(e)(2)] should receive leave to amend unless amendment would be inequitable or futile."[45]  Leave to amend will be denied as

---

[43]  *Oliva v. Nivar*, 973 F.3d 438, 443-44 (5th Cir. 2020); *see also Vega v. United States*, 881 F.3d 1146, 1154 (9th Cir. 2018); *Jones v. Bradley*, No. 4:21-CV-00026, 2023 WL 2088430, at *3 (M.D. Pa. Feb. 17, 2023) (Brann, C.J.) (noting that alternative remedy provided by FTCA counsels against *Bivens* extension); *Oliveras v. Basile*, 440 F. Supp. 3d 365, 373 (S.D.N.Y. 2020) (collecting cases).

[44]  *Oliva*, 973 F.3d at 444 (citing *Minneci v. Pollard*, 565 U.S. 118, 129 (2012)); *see also Xi v. Haugen*, 68 F.4th 824, 837 (3d Cir. 2023) (noting that "an alternative remedy need not provide 'complete relief' or be as 'effective as an individual damages remedy' to foreclose *Bivens* relief" (quoting *Egbert v. Boule*, 596 U.S. 482, 493, 498 (2022))).

[45]  *Grayson*, 293 F.3d at 114.

futile, as Murphy seeks extensions of *Bivens* that are both judicially disfavored and unwarranted under the circumstances.

## V. CONCLUSION

Based on the foregoing, the Court will dismiss with prejudice Murphy's *Bivens* claims pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim upon which relief may be granted. His FTCA claim against the United States may proceed at this early juncture. An appropriate Order follows.

                                                       BY THE COURT:

                                                       *s/ Matthew W. Brann*
                                                       Matthew W. Brann
                                                       Chief United States District Judge